**William WEBB, Plaintiff-Respondent,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant-Appellant.**

**No. 34413.**

Missouri Court of Appeals,
St. Louis District.

Sept. 26, 1972.

Sommers & Holloran, by James P. Holloran, St. Louis, for plaintiff-respondent.

Murphy, Kortenhof & Ely, St. Louis, for defendant-appellant.

CLEMENS, Judge.

The issue presented: When a group accidental injury policy issued to a union for its members excludes "bodily injuries arising out of or in the course of employment," does that exclude an accidental injury received by a union member at a tavern he owns and operates? The answer hinges on interpretation of the word "employment." If it means *any* kind of employment there is no coverage; conversely, if it means employment by plaintiff's regular employer then there is coverage. The trial court held there was coverage, filing findings of fact and conclusions of law,[1] including: "The clear intent of said provisions is to exclude from coverage injuries or diseases covered by Workmen's Compensation Laws or insurance." The court gave plaintiff judgment for $2,175. The insurer appeals, contending its policy excluded coverage.

The facts are simple and undisputed. For 20 years plaintiff William Webb had worked for the Krey Packing Company and was a member of the Butchers and Sausage Makers and Packing House Workers Local No. 545. Since the beginning of plaintiff's work in 1953 the union maintained two General American "Non-Occupational" policies covering union members, one providing weekly disability benefits and the other medical benefits. Each policy excluded "injuries arising out of or in the course of employment."

In addition to his employment by Krey, plaintiff "owned and operated" the "Blue Circle Bar and Lounge"; there he was not covered by workmen's compensation. Plaintiff's wife managed the lounge and its six employees under plaintiff's general and part-time supervision.

On an occasion plaintiff will not forget he refused to let a waitress serve a pugnacious customer. An argument and brawl turned into a fracas in which the customer and a friend attacked, felled and stomped plaintiff, breaking his leg. He was in the hospital for a week and wore a cast six months. This claim followed, defendant denying liability on the ground plaintiff's disability arose out of his employment at the lounge. Plaintiff tacitly concedes his injury arose out of "employment" at his lounge but argues that is not the kind of employment the parties intended to exclude from coverage, contending they meant to cover all accidental injuries except those covered by workmen's compensation through his employment by Krey. We agree.

"Insurance policies, like other contracts, receive reasonable interpretations. The ultimate aim is to ascertain the object and intent of the parties." Packard Mfg. Co.

---

1. A practice most helpful on appeal and in accord with Canons of Judicial Ethics, 1.19, V.A.M.R.

v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W.2d 415 [1]. In reaching our conclusion we also consider Brugioni v. Maryland Casualty Co., Mo., 382 S.W.2d 707 [2–4], where the court said "it is true . . . that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. (Citations). On the other hand, an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer."

We must choose between the two interpretations of "employment." Defendant contends plaintiff was "employed" while at his lounge, citing State v. Canton, 43 Mo. 48: "One of the definitions given by Webster of the word 'employment' is 'occupation; business; that which engages the head or hands.' Worcester says 'employment means business; occupation; object of industry; engagement; avocation; calling, or profession.' As the word may mean, either the act of being employed for one's self, in attending to his own affairs, or in attending to the duties and services of another, it is necessary to construe it with reference to the particular meaning which should be applied to it in this case." We see from this "employment" is a word of flexible meaning, depending on the sense in which it is used. See also the multiple definitions of the word in Webster's Third New International Dictionary, such as occupation, vocation and work in which one's services are paid for by an employer.

"The test of the meaning of non-technical words in an insurance policy is not merely the meaning implied to them by the insurance experts who drafted the policy; instead, courts are more concerned with the meaning that would ordinarily be understood by the layman who bought and paid for the policy. Greer v. Zurich Insurance Company, Mo., 441 S.W.2d 15 [12]." Adams v. Covenant Security Insurance Company, Mo.App., 465 S.W.2d 32 [1].

We note "employment" is undefined by defendant's policies. They do define "employee" as a member of the union and "employer" as the company having a collective bargaining agreement with the union, namely, Krey Packing Company. Thus considering plaintiff as the employee and Krey as the employer, the word "employment" logically means employment by Krey.

Three other factors support this interpretation: (1) defendant designated each policy as "Non-Occupational," which can reasonably be interpreted as meaning plaintiff's occupation as a member of the insured union; (2) the exclusion clause "bodily injuries arising out of or in the course of employment" is cast in terms that describe accidental injuries covered by the Workmen's Compensation Act, § 287.-020, subd. 6, RSMo 1969, V.A.M.R.; and (3) one policy clause states: "The insurance afforded by this policy is not in lieu of nor does it affect any requirements for coverage by Workmen's Compensation Insurance."

We conclude the clause "excluding bodily injuries arising out of or in the course of employment" was reasonably interpreted by the trial court as meaning injuries while plaintiff was employed by Krey Packing Company where he was covered by workmen's compensation insurance, and not to exclude injuries arising from his part-time operation of the Blue Circle Lounge.

Judgment affirmed.

BRADY, C. J., and WEIER and KELLY, JJ., concur.